UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MIKHAL TODD, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 16-5204-BRM-DEA |
| | : | |
| v. | : | |
| | : | |
| CITIBANK, | : | |
| | : | **OPINION** |
| Defendant. | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Citibank's ("Defendant" or "Citibank") Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (ECF No. 8.) Plaintiff Mikhal Todd ("Plaintiff") opposes this motion. (ECF No. 12.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**, as follows: (1) Plaintiff's Fair Debt Collections Practices Act (FDCPA) claim is **DISMISSED WITHOUT PREJUDICE**; (2) Plaintiff's New Jersey State Penal Code § 2C:33-4 claim is **DISMISSED WITH PREJUDICE**; and (3) the Motion to Dismiss is **DENIED** in all other respects.

I.   **BACKGROUND**

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Sometime in January 2016, Citibank allegedly began calling Plaintiff's mobile number. (Compl. (ECF No. 1) at ¶ 8.) Citibank's "calls originated from telephone numbers 800 388 220 and 816 420 1002" and "were made as often as twice per

1

day," resulting in 350 calls. (*Id.* at ¶¶ 9, 10, 15.) Plaintiff alleges Citibank's calls were "pre-recorded" voices stating "Plaintiff's husband, Joseph Todd, should call Defendant at 800 298 6359 and enter a 'key code' number to hear a message." (*Id.* at ¶ 12.) Plaintiff contends "she heard a silence before a recording began, convincing Plaintiff [] Defendant's calls were 'robo-calls.'" (*Id.* at ¶ 11.)

On February 15, 2016, Plaintiff allegedly contacted Citibank and was informed by Citibank's agent "that the telephone calls to her telephone were meant to inform her husband that a payment on his credit card was past due." (*Id.* at ¶ 13.) She further contends she asked Citibank to cease calling her cellular telephone number. (*Id.*) Nonetheless, Plaintiff alleges she "continued to receive telephone calls from Defendant through May, [sic] 2016." (*Id.* at ¶ 14.)

Plaintiff filed this action on August 26, 2016, alleging Citibank violated: (1) the FDCPA by continuously calling her cellular telephone to collect a debt allegedly owed by her husband; (2) the New Jersey State Penal Code § 2C:33-4 because Citibank "intentionally engaged in harassment of Plaintiff with autodialed telephone calls at a rate of two (2) per day, continuing long after Plaintiff requested that they cease"; and (3) the TCPA by "failing to honor Plaintiffs' [sic] desire to opt out of telephone communications despite Plaintiff's clear, unequivocal and repeated requests that such automatic calls cease." (*Id.* at ¶¶ 1, 8-15, 29, 33.) On October 14, 2016, Citibank moved to dismiss all claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), arguing Plaintiff cannot state a claim under: (1) the FDCPA because Citibank is not a "debt collector"; (2) the New Jersey Penal Code because the statute does not create a private cause of action; and (3) the TCPA because Plaintiff failed to properly plead Citibank used an automatic telephone dialing system ("ATDS") when placing the calls and because Plaintiff lacks Article III standing to bring a TCPA claim. (ECF No. 8-2.) Plaintiff opposes the Motion to Dismiss. (ECF No. 12.)

## II. LEGAL STANDARDS
### a. Rule 12(b)(1)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas-St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("The issue of standing is jurisdictional."); *Kaufman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970) ("[W]e must not confuse requirements necessary to state a cause of action . . . with the prerequisites of standing.")).

"Pursuant to Rule 12(b)(1), the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Ballentine*, 486 F.3d at 810 (citing *Warth v. Seldin*, 422 U.S. 490 (1975); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). Nevertheless, on a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cty. Court of Common Pleas,* 75 F.3d 834, 838 (3d Cir. 1996)

(quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan,* 504 U.S. at 561.

Article III "standing consists of three elements." *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As in *Spokeo*, "[t]his case primarily concerns injury in fact, the '[f]irst and foremost' of standing's three elements." *Id.* (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* "A 'concrete' injury must be 'de facto'; that is, it must actually exist." *Id.* (explaining that "[w]hen we have used the adjective 'concrete,' we have meant to convey the usual meaning of the term – 'real,' and not 'abstract'"). "Concreteness, therefore, is quite different from particularization." *Id.*

In *Spokeo*, the Supreme Court held that intangible injuries can be concrete and, under certain circumstances, the risk of real harm can also satisfy the requirement of concreteness. *Id.* at 1549. However, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* As such, a plaintiff may "not, for example, allege a bare procedural violation,

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")) (additional citation omitted).

### b. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not

5

required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DECISION

#### A. Whether Citibank is a "debt collector" under the FDCPA

Citibank argues Plaintiff's "FDCPA claim fails as a matter of law" because Citibank is not a "debt collector" within the meaning of the statute. (Citibank's Mem. of Law (ECF No. 8-2 at 4-5).) Citibank contends "[i]t is well settled that a creditor collecting its own debt is not a debt collector for purposes of the FDCPA." (*Id.* at 4 (citing 15 U.S.C. § 1692a(6); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)).) In opposition, Plaintiff maintains Citibank violated the FDCPA "when it unfairly and unconscionably devised a system of computer generated auto-dialed calls to consumers, which [] unfairly harassed and caused distress to Plaintiff." (ECF No. 12 at 2-3.)

Congress enacted the FDCPA as a result of the "abundance evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168,

174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, Civ. No. 16-cv-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015).

On its Motion to Dismiss, Defendant does not dispute that Plaintiff is a "consumer" under the meaning of the FDCPA. Instead, Defendant only asserts Plaintiff fails to state a FDCPA claim because, as a matter of law, Citibank is not a "debt collector" pursuant to the FDCPA. Therefore, this Court will only address whether Citibank is a debt collector.

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

7

"Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Id.* A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," but "does not include any person . . . that . . . receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Accordingly, the definition "excludes creditors who attempt to collect their own debts, but does not exclude an entity . . . who has acquired a debt that was already in default." *Oppong v. First Union Mortg. Corp.*, 215 Fed. App'x 114, 118 (3rd Cir. 2007); *see Staub v. Harris*, 626 F.2d 275, 277 (3rd Cir. 1980) (citations omitted) (noting the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. It is directed to those person who are engaged in business for the principal purpose of collecting debts").

On the facts alleged in the Complaint, Citibank is a creditor, not a debt collector. Here, Citibank extended credit to Plaintiff's husband and is seeking to collect the debt owed to it by Plaintiff's husband. Indeed, Plaintiff concedes that Citibank was calling her "to inform her husband that a payment on his credit card was past due." (ECF No. 1 at ¶ 13.) The Complaint fails to allege Citibank attempted to collect debts owed by a third party or a debt Citibank acquired already in default. Moreover, Citibank's principal business is providing credit services not debt collection. Accordingly, Defendant's Motion to Dismiss Plaintiff's FDCPA claim is **GRANTED** and the claim is hereby **DISMISSED WITHOUT PREJUDICE.**

### B. New Jersey Penal Code § 2C:33-4

Citibank argues Plaintiff's New Jersey Penal Code claim fails as a matter of law because the statute does not "provide for a private cause of action for harassment (or anything else)." (ECF No.8-2 at 5.) Citibank contends "New Jersey Courts have 'specifically declined the opportunity to consider whether an act of harassment under N.J.S.A. 2C:33-4 creates a civil cause of action for

8

damages.'" (*Id*. at 5 (quoting *Rooney v. Carlomagno,* No. L-1258-07, 2010 WL 199397, *2 (N.J. App. Div. January 22, 2010)).) Plaintiff's opposition does not address this argument. (*See* ECF No. 12.)

Under N.J.S.A. 2C:33-4, "a person commits a petty disorderly persons offense if, with purpose to harass another, he makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." The statute does not explicitly provide a private right of action. In addition, New Jersey courts have "declined the opportunity to consider whether an act of harassment under N.J.S.A. 2C:33-4 creates a civil cause of action for damages," noting that courts "should normally defer to the [state] Supreme Court . . . with respect to the creation of a new cause of action." *Rooney,* 2010 WL 199397, *2 (quoting *Aly v. Garcia,* 333 N.J. Super. 195, 203 (N.J. App. Div. 2000), *certif. denied*, 202 N.J. 43 (2010)).

In light of the New Jersey courts' and State Legislature's reluctance to create a private cause of action under to N.J.S.A. 2C:33-4 and Plaintiff's failure to defend this issue in her opposition to the Motion to Dismiss, *see Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005) (citing *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir.1992) (explaining that if a party represented by counsel fails to oppose a motion to dismiss, the district court may treat the motion as unopposed and subject to dismissal without a merits analysis)), this Court concludes that no private right of action exists at this time and this Court will not create one here. Accordingly, Defendant's Motion to Dismiss Plaintiff's New Jersey Penal Code § 2C:33-4 claim is **GRANTED** and the claim is hereby **DISMISSED WITH PREJUDICE**.

### C. Plaintiff's TCPA Claim

#### 1. Whether Citibank Used an ATDS

Citibank argues Plaintiff's TCPA claim fails as a matter of law because "Plaintiff has not alleged any facts to support her allegation that Citibank used an ATDS." (ECF 8-2 at 8.) Citibank contends "allegations merely stating that a defendant used an ATDS or artificial or prerecorded voice are insufficient to state a TCPA claim because such allegations amount to nothing more than a formulaic recitation of the elements of a TCPA claim." (*Id*. at 6 (citing *Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511 (D.N.J. 2014).) In opposition, Plaintiff maintains Citibank violated the TCPA because "when she answered the[] calls, there was a moment of silence before a recorded message began." (ECF No. 12 at 3.) Thus, the "calls were obviously not placed by a live person." (*Id.*)

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). The TCPA provides in pertinent part:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or *made with the prior express consent of the called party*) using *any automatic telephone dialing system or an artificial or prerecorded voice*—
>
>> (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

> (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A) (emphasis added). Accordingly, the TCPA "makes it unlawful to use an automatic telephone dialing system ("ATDS") . . . without the prior express consent of the called party, to call . . . any cellular telephone[.]" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 373 (2012). "[A]utodialed calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted permission to be called at the number which they have given, *absent instructions to the contrary*." *Gager*, 727 F.3d at 268 (citations omitted).

Pursuant to the statute, an ATDS means "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Further, the TCPA creates a private cause of action by allowing a "person or entity" to bring a private right of action to enjoin violators of the TCPA and "recover for actual monetary loss from such a violation, to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3).

Citibank argues that Plaintiff's TCPA claim fails because it makes conclusory allegations that Citibank placed calls using an ATDS. (ECF No. 8-2 at 6.) This Court does not agree. As Defendant concedes, to state a cause of action under the TCPA, a plaintiff must allege: "(1) that the defendant called the plaintiff's cellular telephone; (2) using an ATDS; (3) without the plaintiff's prior express consent." (*Id.* (quoting *Leon v. Target Corp.*, No. 15-01, 2015 WL

1275918, at *2 (M.D. Pa. Mar. 19, 2015)). Defendant does not dispute Plaintiff properly pled requirements one and three. Instead, Defendant only asserts Plaintiff's TCPA claim "[f]ails [b]ecause Plaintiff [h]as [n]ot [a]dequately [a]lleged [t]hat Citibank [u]sed [a]n ATDS to [p]lace [c]alls." (*Id.*) Accordingly, this Court will only address this issue.

While this Court has found that allegations merely stating a defendant used an ATDS or "an artificial or prerecorded voice" is insufficient to state a TCPA claim, *Trumper*, 79 F. Supp. 3d at 513 (holding plaintiff's TCPA claim failed "under *Twombly* and *Iqbal* because [plaintiff] makes only conclusory allegations that [defendant] placed calls using an automatic telephone dialing system or an artificial or prerecorded voice"), Plaintiff has plead more than just a "bare-boned allegation" (ECF 8-2 at 6). (*See* ECF No. 1.)

Much like in *Connelly v. Hilton Grant Vacations Co., LLC*, No 12-599, 2012 WL 2129364, at *1 (S.D. Cal. June 11, 2012), cited to by this Court in *Trumper*, where the court denied a motion to dismiss a TCPA claim where the plaintiff alleged "[t]he calls had a delay prior to a live person speaking to Plaintiffs or did not even transfer to a live person (resulting in silence on the other end of the phone)," Plaintiff pled "she heard a *silence* before a recording began, convincing Plaintiff that Defendant's calls were '*robo-calls*.'" (ECF No. 1 at ¶ 11 (emphasis added).) Plaintiff further alleges "Defendant's recording was a pre-recorded voice stating that Plaintiff's husband, Joseph Todd, should call Defendant at 800 298 6359 and enter a 'key code' number to hear a message." (*Id.*) Both of these allegations indicate and allow the Court to infer Citibank placed the calls using an ATDS. *See, e.g.*, *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No 15-10058, 2015 WL 5818911, at *3 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, 2015 WL 5818860, at *1 (E.D. Mich. Aug. 31, 2015) (noting plaintiff must provide "at least some [] detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used

more plausible"); *Padilla v. Whetstone Partners, LLC*, No. 14-21079-CIV, 2014 WL 3418490, at *2 (S.D. Fla. July 14, 2014) (dismissing plaintiff's TCPA claim because plaintiff failed to "elaborate on the content of the pre-recorded messages . . . [or] whether there was a *pause* upon his answering the call . . . [or] the content of the pre-recorded messages . . . [or] any other fact that would support his conclusory allegation that he received calls from an automatic telephone dialing system") (emphasis added); *Iniguez v. The CBE Grp.*, 969 F. Supp. 2d 1241, 1247 (E.D. Cal. 2013) (finding an allegation asserting the defendant utilized "an artificial voice" was sufficient "based on Plaintiff's own experience when she answered [the] defendant's phone calls"). As such, Defendant's Motion to Dismiss Plaintiff's TCPA claim must be **DENIED**.

### B. Article III Standing

Citibank argues Plaintiff does not have Article III standing to bring a TCPA claim "because she has not demonstrated that he [sic] has suffered an injury-in-fact caused by Citibank's alleged TCPA violations." (ECF 8-2 at 8.) Plaintiff responds by stating she has met the injury-in-fact requirement because she was "forced to deal with all of the calls coming to her cell phone from Defendant, even those made after she explicitly asked Defendant to cease all auto-dialed calls." (ECF No. 12 at 7).

While the Third Circuit has yet to apply *Spokeo* to a TCPA case, this Court has applied it to a similar TCPA matter. In *Leyse v. Bank of Am. Nat'l Ass'n*, No. 11-7128, 2016 WL 5928683 (D.N.J. Oct. 11, 2016), a third party allegedly made a single phone call on behalf of the defendant to the plaintiff's residential phone line. *Id.* at *1. The plaintiff contended that upon answering the telephone call, the defendant played a prerecorded message. *Id.* Therefore, the plaintiff alleged the defendant's call to the plaintiff's residential phone line violated the TCPA. *Id.* The defendant, however, contended that the plaintiff's allegation failed because it lacked both constitutional and statutory standing. *Id.* at *4. This Court disagreed and found regular users of a phone line being

called "undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect [through the TCPA]." *Id.* "It is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy." *Id.* at *5 (citations omitted).

Other courts have similarly held unwanted telephone calls from an ATDS cause an injury-in-fact. *See Booth v. Appstack, Inc.*, No. C13-1533JLR, 2016 WL 3030256, at *5 (W.D. Wash. May 25, 2016, *order clarified*, WL 3620798 (W.D. Wash. June 28, 2016) (holding the plaintiff's allegations demonstrated an injury as elucidated in *Spokeo* because the plaintiffs were required "to waste time answering or otherwise addressing widespread robocalls"); *Mey v. Got Warranty, Inc.*, 193 F. Supp. 3d 641, 644-46 (N.D.W. Va. 2016).[1]

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." *Gager*, 727 F.3d at 268. Indeed, the harm claimed by Plaintiff, under these specific facts, is precisely that which the TCPA was intended to guard against. *See Leyse*, 2016 WL 5928683, at *4 (noting the Third Circuit has explained "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet

---

[1] In *Mey*, the court found unwanted automated telephone calls cause both concrete and intangible harm. *Mey*, 193 F. Supp. 3d at 644.

> For consumers with prepaid cell phones or limited-minute plans, unwanted calls cause direct, concrete, monetary injury depleting limited minutes that the consumer has paid for or by causing the consumer to incur charges for calls. In addition, all ATDS calls deplete a cell phone's battery, and the cost of electricity to recharge the phone line is also a tangible harm. . . . [S]uch calls also cause intangible injuries, regardless of whether the consumer has a prepaid cell phone or a plan with a limited number of minutes. The main types of intangible harm that unlawful calls cause are (1) invasion of privacy, (2) intrusion upon and occupation of the capacity of the consumer's cell phone, and (3) wasting the consumer's time or causing the risk of personal injury due to interruption and distraction.

*Id.* at 645.

that Congress intended to protect [through the TCPA]" (quoting *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015).

At this stage of the proceedings, Plaintiff has alleged, and this Court must accept the allegations as true, Plaintiff received calls from Defendant "as often as twice per day," amounting to 350 calls and answered at least one of the calls. (*See* ECF No. 1 at ¶¶ 8-15.) In addition, Plaintiff requested Defendant to cease calling her cellular telephone. (*Id.* at ¶ 13.) This Court finds Plaintiff has sufficiently alleged an injury-in-fact for purposes of Article III standing. The purported injury here is Plaintiff's "privacy, peace, and quiet" was disturbed by the numerous telephone calls. *See Leyse*, 2016 WL 5928683, at *4 (noting the Third Circuit has explained "a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest in privacy, peace, and quiet that Congress intended to protect [through the TCPA]"). This decision is limited to the facts of this case and does not hold whether or not a violation of the TCPA automatically satisfies the injury-in-fact requirement. For the reasons set forth above, Defendant's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Citibank's Motion to Dismiss Plaintiff's FDCPA claim **without prejudice** and Plaintiff's New Jersey Penal Code § 2C:33-4 claim **with prejudice.** The Motion to Dismiss is otherwise **DENIED**.

**Date: April 26, 2017**                   */s/ Brian R. Martinotti*
                                                      HON. BRIAN R. MARTINOTTI
                                                      UNITED STATES DISTRICT JUDGE